### R. S. WAILES, Wife, v. SMITH C. DANIELL.

Decision in *Harper v. Stanbrough*, 2 An. 377, re-affirmed.

The will of *A. C.*, made in the State of Mississippi, where he died, and where his estate was situated, contained the following clause: "*I give and bequeath to my grandson, White Turpin Pettit, and his heirs lawfully begotten, all the balance of my estate, real, personal and mixed, together with the rest and residue of which I may die possessed, to enure to and vest in the said White Turpin Pettit, on the day on which he shall have attained the age of twenty-one years and not before, and in the event of the said White Turpin Pettit dying before he shall have arrived at lawful age, as aforesaid, and leaving no heir of his own body, or in the event of his death at any time thereafter, without lawful issue, then, and in such contingency or contingencies, I give, devise and bequeath, all the real and personal and mixed estate aforesaid, to Rebecca S. M. Wailes, daughter, and only surviving child of my brother Leonard Covington, and wife of Benjamin L. C. Wailes, and to her heirs forever.*" *Held:* That such a clause in a will is a *substitution* prohibited by our laws, and that negroes forming a part of the bequest having been removed to this State and sold here before the happening of the contingency by which the title was to vest in the testator's niece, the title of the purchaser here could not be disturbed.

APPEAL from the Third District Court of New Orleans, *Duvigneaud*, J.
*A. N. Ogden & Stansbury*, for plaintiff. *Benjamin, Bradford & Finney*, for defendant and appellant.

VOORHIES, J. The plaintiff and defendant are both residents of the State of Mississippi. The former sets up title to three slaves,—*Jacob, Sam* and *Julienne*,— in the latter's possession in the State of Louisiana.

*Alexander Covington,* the plaintiff's uncle, a resident of the State of Mississippi, left a will, in which is found the following clause :

" I give and bequeath to my grandson, *White Turpin Pettit,* and his heirs lawfully begotten, all the balance of my estate, real, personal and mixed, together with the rest and residue of which I may die possessed, to enure to and vest in the said *White Turpin Pettit,* on the day on which he shall have attained the age of twenty-one years and not before, and in the event of the said *White Turpin Pettit* dying before he shall have arrived at lawful age, as aforesaid, and leaving no heir of his own body, or in the event of his death at any time thereafter, without lawful issue, then, and in such contingency or contingencies, I give, devise and bequeath, all the real and personal and mixed estate aforesaid, to *Rebecca S. M. Wailes,* daughter, and only surviving child of my brother, *Leonard Covington,* and wife of *Benjamin L. C. Wailes,* and to her heirs forever."

The legatee, *White Turpin Pettit,* arrived at the age of majority, altered his name into that of *Turpin Covington.* On the 7th day of January, 1855, he sold the negroes in controversy to the defendant, by act *sous seing privé,* passed in the city of New Orleans, where the slaves had been removed.

*Turpin Covington* having subsequently died, without leaving any lawful issue of his body, the plaintiff contends that the slaves in question vested in her, notwithstanding the transfer made by the deceased to the defendant.

The clause by which the testator bequeathed the residue of his estate to *White Turpin Pettit,* with the stipulation that, in case the latter died leaving no heirs, the property should vest in the plaintiff, is a substitution under our laws. C. C. 1507 ; 5 An. 552, *J. E. Latiolais* v. *Solastie A. Roy ;* 7 An. R. 395, *Succession of Franklin ;* 9 An. R. p. 510, *C. B. Sherrod & Co.* v. *D. E. Calleghan et als.;* 10 An. 572, *D. W. Murphy* v. *Executor of W. Cook.*

But the plaintiff contends that the above disposition, however reprobated by our laws, is valid by the laws of Mississippi, where the last will was opened and probated ; and that, inasmuch as the parties litigant are citizens of the latter State, and the property in question was situated in it at the time the will took effect, there can be no impropriety in giving effect to this devise, although the property be now situated in this State.

This same question was thoroughly investigated in the case of *Harper* v. *Stansbrough,* 2 An. 377. C. J. Eustis, the organ of the court, said : " It is the attribute of every government to establish and regulate such modifications of the rights of property in things, within its jurisdiction, as the public interest requires. Testamentary substitutions are prohibited in this State. The prohibition is established in the interest of public order and State policy. They have always been held null by our courts. Nor does it appear material in relation to the nullity of the substitution as the basis of a title, whether the testamentary disposition acts upon the property within this State at the time of its taking effect, or subsequently on the translation of the property to this State. The effect which we give to our own laws on property within our jurisdiction is no more than that which is usual, particularly in relation to this description of property."

It must be remarked that, in the case under consideration, the slaves were removed to Louisiana before the defendant purchased them, and before the title could have vested in the plaintiff by virtue of the will of her uncle,—at a time, therefore, that his vendor had the full ownership for himself and his heirs, subject, it is true, to be subsequently defeated in the State of Mississippi, by the

WAILES
*v.*
DANIELL.

happening of a contingency,—the vendor's demise without leaving any heirs of his body.

The policy of our laws is to exclude substitutions and *fidei commissa ;* and, con_ sequently, however valid may be in Mississippi the devise to the plaintiff, our courts cannot give it effect on property removed, and purchased, and held here, before the happening of the contingency, which puts an end to the first legatee's rights in order to vest the title in the remainderman. The cases of *McCall* v. *White,* 10 An. 577; of *Holloman* v. *Holloman,* 12 An. 607, and of *Groves* v. *Nutt et als.,* 13 An. 117, are not in conflict with the case of *Harper* v. *Stansbrough.* In the latter case, the doctrine announced had no reference to cases where the title of the second devisee or remainderman had already vested before the removal of the property from another, to this State. The will having already had its effect in another State, it is evident that the subsequent translation of the property into Louisiana, could not defeat the acquired title.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed.

It is further ordered and decreed, that the plaintiff's demand be rejected with costs.